FILED
2016 Apr-28  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

Joshua C. Snable, Of Counsel
Lewis, Feldman, Lehane & Snable, LLC
2112 11th Avenue South, Suite 542
Birmingham, AL  35205
Tel: (818) 907-2030
jsnable@AlabamaConsumerLaw.com
Attorney for Plaintiffs,
Tommy & Katrina Heard

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA – BIRMINGHAM DIVISION

| | |
|---|---|
| TOMMY & KATRINA HEARD,<br><br>            Plaintiff(s),<br><br>     vs.<br><br>NATIONSTAR MORTGAGE LLC.;<br>EQUIFAX INFORMATION<br>SERVICES, LLC.; EXPERIAN<br>INFORMATION SOLUTIONS, INC.;<br>TRANS UNION, LLC; and DOES 1 to<br>10 inclusive<br><br>            Defendant(s). | **Case No.:**<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**1. TCPA, 47 U.S.C. § 227**<br><br>**2. FAIR CREDIT REPORTING ACT [15 USC § 1681 et. seq.]** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Tommy & Katrina Heard ("Plaintiffs"), by and through their attorney, bring this action to secure redress from Nationstar Mortgage LLC ("Nationstar") for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et. seq.

Additionally, Plaintiffs, by and through their attorneys, bring this action to secure redress from Defendants Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Trans Union, LLC

("TransUnion") (herein collectively as "Defendants"), for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et. seq.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681(p), which states that such actions may be brought and heard before "any appropriate United States district court, without regard to the amount in controversy."

2. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Because Defendant transacts business here, personal jurisdiction is established.

## PARTIES

3. Plaintiffs are consumers, natural persons allegedly obligated to pay a debt, and a citizen of the United States of America who presently resides in Alexandria, Tallapoosa County, Alabama.

4. Defendant, Nationstar Mortgage LLC (hereinafter "Nationstar") is a Delaware corporation, headquartered in the State of Texas, with its corporate office located at 8950 Cypress Waters Boulevard, Coppell, TX 75019 and is a business registered to do business in Alabama (Entity ID Number 603-160). Nationstar is an entity which engaged in the practice of furnishing consumer information to consumer reporting agencies, and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s2(a) &(b), and other sections of the FCRA.

5. Defendant, Equifax Information Services, LLC (hereinafter "Equifax"), is a national corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.  At all relevant times

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

herein, Equifax, was an entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engaged in whole or in part in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing consumer reports to third parties, and used some mean or facility of interstate commerce for the purpose of preparing or furnishing consumer reports, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

6.   Defendant, Experian Information Solutions, Inc. (hereinafter "Experian"), is a national corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California, 92626.  At all relevant times herein, Experian, was an entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engaged in whole or in part in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing consumer reports to third parties, and used some mean or facility of interstate commerce for the purpose of preparing or furnishing consumer reports, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

7.   Defendant, Trans Union LLC. (hereinafter "TransUnion"), is a national corporation with its corporate office and headquarters located at 555 W. Adams Street, Chicago, IL 60661.  At all relevant times herein, TransUnion, was an entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engaged in whole or in part in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing consumer reports to third parties, and used some mean or facility of interstate commerce for the purpose of preparing or furnishing consumer reports, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

8. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.  In or around 2001, Plaintiffs entered into a conventional mortgage loan with AMSouth Bank to purchase a new home.

10. In or around 2004, Plaintiffs refinanced their mortgage with GMAC Mortgage.

11. In or around 2012, GMAC Mortgage filed for bankruptcy protection and the mortgage servicing for Plaintiffs' home was transferred to Ocwen.

12. At all relevant times, Plaintiffs made timely payments on the mortgage and property insurance. Plaintiffs had automatic online payment setup so that they did not have to worry about missing payments.

13. In or around Aprilof 2015, unbeknownst to Plaintiffs, Nationstar began charging Plaintiffs for homeowner's insurance and added an escrow account to Plaintiffs' mortgage; Plaintiffs believed Ocwen to be the loan servicer up and until they received a mortgage statement from Nationstar on or about May 10, 2015.

14. Plaintiffs immediately called Ocwen to discuss why they were receiving a statement from Nationstar and were told that the loan had been transferred. Plaintiffs then called Nationstar to explain that they had proper insurance and did not need an escrow account.

15. On or about June 5, 2015 Nationstar sent a "Second and final Notice" (the first notice received by Plaintiffs) explaining that Nationstar would being force-placing insurance if Plaintiffs did not provide proof of insurance;

Plaintiffs had their insurance company send in proof that Plaintiffs had maintained adequate insurance and that there had been no lapse in insurance coverage- Plaintiffs confirmed this information was received by Nationstar.

16. By July 2014, Nationstar agreed that the escrow account was not appropriate for Plaintiffs' account.

17. In August of 2014, Nationstar removed any Escrow from the statements but continued to claim that Plaintiffs were behind on their mortgage; Nationstar also began reporting Plaintiffs as being 30 days late on their credit report in or around this time.

18. Frustrated, Plaintiffs faxed in copies of bank statements showing that they had made their mortgage payments timely, including in April and May of 2014 directly to Ocwen. ; These payments were made prior to Plaintiffs learning of the transfer of the loan servicing to Nationstar.

19. After receiving the bank statements, Nationstar admitted that the May payment had been made but asserted that the payments made in April and May were not for the full amount despite the fact that Plaintiffs had made the same payment of $360 every month for several years.

20. Upon information and belief, Nationstar unilaterally increased Plaintiffs' monthly payment or made an accounting error.

21. Plaintiffs objected to the apparent unlawful increase of their mortgage payment and eventually succeeded in getting Nationstar to collect the mortgage payments due under the contract.

22. As of today, Nationstar continues to report Plaintiffs as past due in an amount of $405.00 and reports Plaintiffs as being 30 days late; albeit inconsistently.

23. In an attempt to collect on the above mentioned debt, Nationstar began calling Plaintiffs on their cellular phone number ending in 6545 in or around

August 2015 from the following number: (888) 811-5279; this number is owned or operated by Nationstar.

24. Plaintiffs explained that they were not late, did not owe any money to Nationstar and protested that Nationstar continued to harass them for an unlawful payment; these calls continued on an almost daily basis.

25. Finally, on August 22, 2015, at 3:57 p.m. Plaintiffs answered a call from (888) 811-5279 and unequivocally revoked consent to be contacted on their cellular telephone.

26. Between August 22, 2015 to August 31, 2015, Plaintiffs were called no less than Thirteen (13) times after having unequivocally revoked consent to be contacted on their cellular phone.

27. Between September 1, 2015 to September 30, 2015, Plaintiffs were called no less than Twenty-two (22) times after having unequivocally revoked consent to be contacted on their cellular phone.

28. Between October 1, 2015 to October 31, 2015, Plaintiffs were called no less than Twenty-seven (27) times after having unequivocally revoked consent to be contacted on their cellular phone.

29. On October 29, 2015, at 11:10 a.m. Plaintiffs answered a call from (888) 811-5279 and for the second time, unequivocally revoked consent to be contacted on their cellular telephone. Shortly after the revocation, Plaintiffs received another call at 4:54 p.m. from (888) 811-5279.

30. Between November 1, 2015 to November 30, 2015, Plaintiffs were called no less than Twenty (20) times after having repeatedly unequivocally revoked consent to be contacted on their cellular phone.

31. On November 23, 2015, at 8:39 pm. Plaintiffs answered another call from (888) 811-5279. Plaintiffs spoke with Nationstar representative Riza and,

for a third time, unequivocally revoked consent to be contacted on their cellular phone.

32. On December 2, 2015, at 10:28 am. Plaintiffs received another call from (888) 811-5279. This time, Plaintiffs spoke with Ann and, for a fourth time, unequivocally revoked consent to be contacted on their cellular phone.

33. On December 3, 2015, at 9:19 am & 4:16 p.m. Plaintiffs answered two calls from (888) 811-5279. Plaintiffs spoke with Carlos on the first call and Johna[SIC] on the second calls. During both calls, Plaintiffs unequivocally revoked consent to be contacted on their cellular phone.

34. Between December 1, 2015 to December 31, 2015, Plaintiffs were called no less than Twenty (20) times even after having repeatedly and unequivocally revoking consent to be contacted on their cellular phone.

35. Between January 1, 2016 to January 31, 2016, Plaintiffs were called no less than Twenty-one (21) times after having repeatedly and unequivocally revoking consent to be contacted on their cellular phone.

36. Between February 1, 2016 to February 26, 2016, Plaintiffs were called no less than Fifteen (15) times after having repeatedly and unequivocally revoking consent to be contacted on their cellular phone.

37. Between March 1, 2016 to March 31, 2016, Plaintiffs were called no less than Twenty (20) times after having repeatedly and unequivocally revoking consent to be contacted on their cellular phone.

38. As of the date of this complaint, Nationstar continues to harass Plaintiffs by continuously and repeatedly calling their cellular telephone regarding collection of a debt they do not even owe..

39. In total, and as of the date of this Complaint, Nationstar contacted Plaintiffs not less than One Hundred Sixty-Two (162) times after Plaintiffs unequivocally revoked consent to be contacted.

40. Each time Plaintiffs answered the phone, there was a pause before the representative would begin to speak indicating that the call was being placed by an automated telephone dialing system.

41. Aside from calling Plaintiffs on their cellular phone in an attempt to collect on a debt that Plaintiffs do not owe, Nationstar also reported the inaccurate debt to the credit bureaus.

42. In or around October of 2015, Plaintiffs discovered that their credit reports from Equifax, Experian, and TransUnion were reporting the Nationstar Account # 62724 (hereinafter the "Account") as being delinquent at least 30 days in one or more months in 2015.

43. In addition to the late payments being reported, Equifax also reported that Plaintiff was past due $366.00; that amount varied in subsequent credit reports.

44. Plaintiff, Katrina Heard's credit reports from Defendants Experian, Equifax and Trans Union also showed that Mrs. Heard was at least 30 days late on the Account.

45. In fact, Mrs. Heard's reports showed her as being 30 days past due as of Aug 2015, on time as of September 2015 and late again as of Oct 2015..

46. Plaintiffs attempted to resolve the dispute directly with Nationstar throughout June, July and August of 2015.

47. Tommy Heard also sent dispute letters by USPS Certified Mail to all three credit reporting agencies in December 2015: (1) Equifax, tracking no: 7014 2120 0004 1623 8935; (2) Experian, tracking no: 7014 2120 0004 1623 8928; and (3) TransUnion, tracking no: 7014 2120 0004 1623 8911.

48. In the dispute letters, Plaintiff disputed the Nationstar Mortgage Account No. 62724xxxx for inaccurately reporting late payments on his payment history. This inaccurate reporting is, in part, due to Nationstar improperly

placing insurance on Plaintiffs' home. Plaintiff attached, to the dispute, proof that he already had in place property insurance; this information had been previously provided directly to Nationstar.

49. In or around January 2016, Plaintiff Tommy Heard received responses from Experian, Trans Union and Equifax, all of whom continued to report that he was late on the Account; Equifax and Trans Union continued to report a past due balance.

50. Upon information and belief, the three consumer credit reporting agencies each sent automatic customer dispute informing Nationstar that Plaintiff Tommy Heard was disputing the reporting of the Account.

51. On or around January 5, 2016, Plaintiff Katrina Heard also sent similar dispute letters to Experian and Equifax regarding the inaccurate reporting on her credit reports. She sent the letters by UPS Certified Mail to (1) Equifax, tracking no: 7014 0510 0001 6709 1815; and (2) Experian, tracking no: 7014 0510 0001 6709 1822.

52. On February 01, 2016, Plaintiff Katrina Heard received a response from Experian stating that Experian had reviewed the documentation provided with the dispute, but have determined that Experian was not able to use it to make the changes or deletions as Plaintiff requested. Experian also stated that it will contact the furnisher of the information and will send Plaintiff the results.

53. As of today, Defendants continue to report the late payments on Plaintiffs' credit reports and in at least one case continue to report a past due amount.

54. As of April 1, 2015, Plaintiffs were current on their mortgage payment of $346.73; which was being serviced by Ocwen. (See attached Exhibit A, Ocwen loan statement).

55. Plaintiffs' April mortgage payment was automatically paid to Ocwen on April 9, 2015 in the amount of $360.00. (See attached Exhibit B, partially redacted Fort McClellan Credit Union Statement).

56. Plaintiffs' May mortgage payment was automatically paid to Ocwen on May 8, 2015 in the amount of $360.00. (See attached Exhibit B, partially redacted Fort McClellan Credit Union Statements).

57. On or about May 10, 2015, for the first time Plaintiffs received a mortgage statement for the June 2015 payment from Nationstar which was dated May 6, 2015.  The statement indicated that Plaintiffs owed $1007.70; which was purportedly due to Plaintiff having not paid the May payment, a sudden increase in the monthly payment to $503.85 and a sudden inclusion of an Escrow account.

58. Plaintiffs' June mortgage payment was automatically paid to Nationstar on about June 8, 2015 in the amount of $360.00. (See attached Exhibit B, partially redacted Fort McClellan Credit Union Statements).

59. Plaintiffs immediately contacted Nationstar after receiving the May statement and explained that they had property insurance, which was paid outside of the mortgage and was, and had been, insuring the home.

60. Plaintiffs further explained to Nationstar that they had not missed any payments and the April and May 2015 payments were made to Ocwen, as required.

61. Plaintiffs also contacted Ocwen regarding the alleged missed payments.

62. Ocwen explained that when it transferred the servicing to Nationstar it also transferred three (3) mortgage payments; Ocwen provided tracking information to Plaintiffs for the payments sent to Nationstar.

63. The three payments were sent from Ocwen to Nationstar by Federal Express overnight mail; the first payment sent on April 13, 2015, tracking

number 773355328310 which was delivered on April 14, 2015 and signed for by H. Galaviz; the second payment was sent by overnight mail on April 16, 2015, tracking number 773386998399 and was delivered on April 17, 2015 and signed for by R. Muhamed;  and the third payment was sent by overnight mail on May 13, 2015, tracking number 773594602310 and was delivered on May 14, 2015 and signed for by M. Hameed.

64. Plaintiffs called Nationstar again and provided them with the payment information and were assured that the errors would be corrected.

65. Nevertheless, Nationstar continued to bill Plaintiffs each month including Overdue amounts despite Plaintiffs having made all payments.

66. Plaintiffs continued to pay Nationstar beginning in June, through the present, by automatic payment from their checking account in the amount of $360.00; which is greater than the monthly payment owed.

67. As a result of Defendants actions, Plaintiffs have suffered actual pecuniary losses related to time and expenses involved in preparing and mailing certified letters to the Defendants.

68. Plaintiffs have suffered emotional distress, anxiety and sleepless nights related to the constant barrage of phone calls and past due billing statement they receive each month from Nationstar.

69. Plaintiffs have suffered emotional distress, anxiety and sleepless nights related to the inaccurate credit reporting.

## COUNT I – FIRST CLAIM FOR RELIEF
## DEFENDANT NATIONSTAR VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §227

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. Defendant Nationstar violated the TCPA.  Defendant's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions,  Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than   a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

   b. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiffs at Plaintiffs' cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendant knowing and/or willfully violated the TCPA.

72. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiffs are entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiffs are entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II – SECOND CLAIM FOR RELIEF
## DEFENDANT NATIONSTAR VIOLATED THE FAIR CREDIT
## REPORTING ACT (FCRA) 15 U.S.C. § 1681 *et seq.*

73. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74. The FCRA requires a furnisher such as Defendant, after receiving notice from a consumer reporting agency that a consumer disputes information that is being reported by that furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information. 15 U.S.C. § 1681s-2(b).

75. Defendant provided and continues to provide inaccurate information to the consumer reporting agencies.

76. Plaintiffs notified Experian, Equifax, and TransUnion that Plaintiffs' reports concerning Nationstar were inaccurate. Thereafter, the consumer reporting agencies notified Nationstar that Plaintiffs were disputing the information it had furnished to the consumer reporting agencies.

77. Defendant violated 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. §1681s-2(b);

    a.  willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiffs disputed;

b.  willfully and negligently failing to review all relevant information concerning Plaintiff's account provided to Defendant;

c.  willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d.  willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

e.  willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

f.  willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning the Plaintiffs to credit reporting agencies;

g.  willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff's account to credit reporting agencies; and

h.  willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

78.  In reporting the aforementioned debt, Defendant, by and through its agents and employees, violated the provisions of the Fair Credit Reporting Act by furnishing information on the Plaintiffs to one or more consumer reporting agencies although Defendant knew, or consciously avoided knowing, that the information was inaccurate.

79.  Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Plaintiffs that are outlined more fully above, and as a result, Defendant is

liable to compensate Plaintiffs for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief, permitted by 15 U.S.C. § 1681n.

### COUNT III – THIRD CLAIM FOR RELIEF DEFENDANTS EQUIFAX, EXPERIAN, AND TRANSUNION VIOLATED THE FAIR CREDIT REPORTING ACT, (FCRA), 15 U.S.C. § 1681 *et seq.*

80. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

81. The Fair Credit Reporting Act provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(l)(A).

82. The Act further requires the consumer reporting agency, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the consumer reporting agency to "include all relevant information regarding the dispute that the agency received from the consumer." 15 USC § 1681i(a)(2) (A). In conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

83. On multiple occasions, Plaintiffs notified Defendants of an inaccuracy contained in the credit reports and asked them to correct said inaccuracy.

84. On multiple occasions, Defendants failed to conduct a reasonable reinvestigation of the inaccuracy that Plaintiffs disputed.

85. Defendants failed to review and consider all relevant information submitted by Plaintiffs.

86. Defendants failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports, information and file, in violation of 15 U.S.C. § 1681e(b).

87. As a result of the above-described violations of 15 U.S.C. § §1681i and 1681e(b), Plaintiffs have sustained damages.

88. Defendants' violations of the FCRA were willful and therefore Plaintiffs are therefore entitled to also seek statutory and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully prays that judgment be entered against Defendants for the following:

A. Actual damages;

B. Statutory damages;

C. Punitive damages;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

E. Such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiffs, Tommy & Katrina Heard, demand trial by jury in this action.

Respectfully submitted,

Dated: <u>April 28, 2016</u>

<u>/s/ Joshua C. Snable</u>
Joshua C. Snable
*Attorney for Plaintiffs,*
*Tommy & Katrina Heard*

OF COUNSEL:
Lewis, Feldman, Lehane & Snable, LLC
2112 11th Avenue South, Suite 542
Birmingham ,AL  35205
Tel: (818) 907-2030
jsnable@AlabamaConsumerLaw.com