FILED

2017 Jul-26  PM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **TOMMY & KATRINA HEARD,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NATIONSTAR MORTGAGE LLC,** *et. al.*,<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **CIVIL ACTION NO.<br>2:16-cv-00694-MHH** |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## <u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

R. Frank Springfield (SPR024)
Ryan J. Hebson (HEB003)

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
fspringf@burr.com
rhebson@burr.com

Henry Pietrkowski (admitted PHV)
Robert M. Luck, III (admitted PHV)

REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois  60606-7507
Telephone:  (312) 207-3904
Facsimile:  (312) 207-6400
hpietrkowski@reedsmith.com

901 East Byrd Street, Suite 1700
Richmond, Virginia  23219
Telephone:  (804) 344-3416
Facsimile:  (804) 344-3410
rluck@reedsmith.com

# **TABLE OF CONTENTS**

**Page:**

I.   **INTRODUCTION** ...........................................................................1

II.  **COUNTER STATEMENT OF MATERIAL FACTS** ...............................2

III. **STANDARD OF REVIEW** ...............................................................5

IV.  **ARGUMENT AND CITATION OF AUTHORITY** .................................6

    A.   Disputed Issues of Law and Material Fact Exist as to Whether Nationstar Used An "Automatic Telephone Dialing System" as Defined by the TCPA; Thus, Plaintiffs' Motion Should be Denied as to the TCPA Claim. ...............................................................6

    B.   Alternatively, This Case Should Be Stayed Pending the Outcome of the D.C. Circuit's Decision in *ACA International* Regarding the Definition of an ATDS. .................................................................11

    C.   Plaintiffs' Claimed TCPA Violations Were Not "Willful or Knowing." ......................................................................................14

    D.   Plaintiffs Provided the Number to Nationstar and Could Not Unilaterally Revoke Consent to Be Called. ........................................16

    E.   Plaintiffs' TCPA Claims Are Also Barred to the Extent they are Based on Conduct that Took Place Prior to October 14, 2015, the Effective Date of the *Wright* Class-Action Settlement. ......................................16

    F.   Genuine Issues of Disputed Material Fact Exist Regarding the Reasonableness of Nationstar's Investigation of Plaintiff's Credit Dispute, Precluding Summary Judgment on the FCRA Claim...........19

V.   **CONCLUSION** ...........................................................................**25**

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant Nationstar Mortgage, LLC ("Nationstar"), by its counsel, files this Memorandum in Opposition to Plaintiffs Tommy and Katrina Heard's ("Plaintiffs") Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 47) (the "Motion"). Defendant requests that Plaintiffs' Motion be denied because there are disputed issues of material fact for the trier of fact to review, which preclude judgment in Plaintiffs' favor.

## I.    INTRODUCTION

Plaintiffs ask this Court to grant summary judgment as to both their Telephone Consumer Protection Act ("TCPA") and Fair Credit Reporting Act ("FCRA") claims. However, Plaintiff's motion should be denied because disputed issues of material fact render summary judgment inappropriate. Indeed, in some instances, Plaintiffs have not even met their initial burden to provide evidence on the necessary elements of their claims. For instance, Plaintiffs seek to hold Nationstar liable under the TCPA for calls Plaintiffs allege were made by an automated telephone dialing system ("ATDS"), which is a threshold element of their TCPA claim. However, the basic statutory definition of an ATDS requires that Nationstar's telephone system have "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227. Plaintiffs have not presented any evidence to show that Nationstar's

telephone system has the necessary capacity "to store or produce telephone numbers to be called, using a random or sequential number generator."  The only evidence before the Court concerning the relevant capacity of Nationstar's telephone system is that Nationstar's telephone system does *not* have the current capacity "to store or produce telephone numbers to be called, using a random or sequential number generator."  *See* Nationstar's Response and Counterstatement to Plaintiffs' Statement of Facts ("NSOF") at ¶¶ 52, 130-131.

Plaintiffs also assert that Nationstar violated the FCRA by failing to conduct a "reasonable investigation" into the Plaintiffs' credit reporting disputes. However, not only does the evidence before this Court tend to show that a reasonable investigation was conducted, but the question of whether an investigation was reasonable is routinely and properly left for the trier of fact to determine.  As such, summary judgment is not appropriate as to either of Plaintiffs' claims and the Plaintiffs' Motion for Summary Judgment should be denied.

## II.    <u>COUNTER STATEMENT OF MATERIAL FACTS</u>

In October of 2005, Plaintiffs refinanced their mortgage on the Property with GMAC Mortgage.   NSOF ¶ 2.  When applying to refinance their mortgage, the Plaintiffs provided their cell phone number ending in 6545 ("Plaintiff's Phone Number") on the loan application.  *Id*.  The servicing of the mortgage for the Property was later transferred to Ocwen.  NSOF at ¶ 8.

On or about April 16 of 2015, the servicing of the mortgage on the Property was transferred from Ocwen to Nationstar.  NSOF at ¶¶ 8, 10.  Prior to the transfer of servicing from Ocwen to Nationstar, Ocwen records provided to Nationstar show that Ocwen force placed insurance on the Property.  NSOF at ¶¶ 6, 8, 10.  Thus, when the mortgage was transferred to Nationstar, it was transferred with a negative escrow balance related to that force placed insurance.  *Id*.  When the Plaintiffs' mortgage was transferred from Ocwen, it had a negative escrow balance of $329.49.  NSOF at ¶ 8, 123.

Due to the force placed insurance and resulting escrow, the payment amount due increased to cover the required escrow amount when the loan was transferred to Nationstar.  NSOF at ¶¶ 10, 14, 124.  Plaintiffs' payments in May and June 2015 were less than the amount due with the escrow amount included.  NSOF at ¶¶ 10, 14, 124.  While escrow was subsequently removed from the account going forward, Nationstar's records for the mortgage showed a past due amount as a result of the loan transferring with a negative escrow balance and the short payment in or about May of 2016.  NSOF at ¶¶ 10, 14, 122-125.

Nationstar attempted to contact and did contact Plaintiff Tommy Heard by phone concerning the Mortgage and for collection purposes.  The telephone equipment used to place many of the calls was the Avaya Proactive Contact system.  NSOF ¶¶ 52, 127.  During the period of the calls at issue, the equipment

did not have the current capacity to store or produce and dial telephone numbers to be called using a random or sequential number generator.  NSOF ¶¶ 52, 130-131. Instead, Nationstar's telephone equipment can only dial phone numbers that are specifically downloaded onto it each day. *Id*.  Nationstar's telephone equipment also does not, and did not, store any customer information.  NSOF ¶¶ 52, 132.  All customer information, including customers' account and contact information, is instead stored on Nationstar's host system.  NSOF ¶¶ 52, 133.

Each day that Nationstar is making calls to its customers, it creates a list of phone numbers to be called that day.  NSOF ¶¶ 52, 134-136.  That list is then manually loaded onto the telephone equipment.  *Id*.  The list varies from day-to-day depending on the criteria defined by Nationstar.  *Id*.  Also, the list is manually updated at least every hour by Nationstar based on updates to customers' accounts. *Id*.  The updates to the list dictate which customers will and will not be called.  *Id*.

In late 2015 and early 2016, Nationstar received disputes from the Plaintiffs concerning the credit reporting of the mortgage account.  The disputes all generically disputed the "current balance" or the "present previous account status." NSOF ¶¶ 75, 139-140.  The disputes received from the credit bureaus requested verification of "payment history profile, account status and payment rating." NSOF ¶¶ 139-141.  Each dispute was individually reviewed and checked against Nationstar's records and payment history for the account.  NSOF ¶¶ 142, 145-47.

Nationstar's agents, when investigating disputes, compare the information in the disputes with the information within Nationstar's records to determine if what is being reported to the credit bureaus was consistent with the information in Nationstar's records.   NSOF ¶ 142.   Nationstar then updated or verified that information accordingly.  NSOF ¶ 145-147.

## III.   <u>STANDARD OF REVIEW</u>

To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  *See Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014).  Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  Summary judgment is inappropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Additionally, the issues raised by Plaintiffs are mixed questions of law and fact, involving the application of a legal standard to a particular set of facts.  *See*

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). The United States Supreme Court has noted that the underlying objective facts, even if free from dispute, are only the starting point for determining what inferences a "reasonable" person would draw from those facts. *Id.* Only if no reasonable minds could differ about the inferences to be drawn from the undisputed facts could the ultimate issue be appropriately resolved by summary judgment. *Id.*

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Disputed Issues of Law and Material Fact Exist as to Whether Nationstar Used An "Automatic Telephone Dialing System" as Defined by the TCPA; Thus, Plaintiffs' Motion Should be Denied as to the TCPA Claim.

The Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), for purposes of this matter, regulates calls made to cell phones. More specifically, the TCPA restricts when calls may be made using an "automatic telephone dialing system" to a "telephone number assigned to a . . . cellular telephone service" without the recipients consent. 47 U.S.C. § 227(b)(1)(A). In order for Plaintiffs to prevail on their TCPA claim, they must show that Nationstar called their cell phone using an "automatic telephone dialing system" (ATDS) and that such calls were made without prior consent. *Id.*; *Buslepp v. Improv Miami, Inc.*, No. 12-cv-60171, 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012). The use of an ATDS "is a threshold issue for liability under the TCPA." *Rose v. Wells Fargo Advisors, LLC*, No. 1:16-cv-562, 2016 WL 3369283, at *2 (N.D. Ga. June 14, 2016);

*Coatney v. Synchrony Bank*, No. 6:16-cv-389, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016) ("Whether Defendants used an ATDS when making telephone calls to Plaintiff is 'a threshold issue for liability under the TCPA and for the scope of discovery.'" (quoting *Rose*, 2016 WL 3369283, at *2)).

The TCPA provides a very specific definition of the term "automated telephone dialing system" (or "ATDS"):

> The term "automatic telephone dialing system" means equipment which **has the capacity**—
>
> > (A) to store or produce telephone numbers to be called, **using a random or sequential number generator**; and
> > (B) to dial such numbers.

47 U.C.S. § 227(a)(1) (emphasis added).

Plaintiffs seek to hold Nationstar liable for allegedly calling their cell phone using an "automatic telephone dialing system" ("ATDS"). *See* Motion at pp. 9-10. However, Plaintiffs have produced no evidence whatsoever that Nationstar's telephone system "has the capacity to store or produce telephone numbers to be called, **using a random or sequential number generator**." *See* Motion generally; 47 U.C.S. § 227(a)(1) (emphasis added). This is because Nationstar's telephone system has no such capacity. NSOF ¶ 52. Nationstar cannot have violated this provision of the TCPA with respect to the Plaintiffs because Nationstar did not use an automatic telephone dialing system, as defined by the TCPA, to place any of the calls at issue in this matter.

When Congress passed the TCPA to regulate telemarketing in 1991, Congress vested regulatory oversight of the TCPA to the Federal Communication Commission. Since that time, the FCC has issued a number of regulations and orders implementing the TCPA, including its recent order on July 10, 2015. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd 7961, 7974-75 (2015) (hereinafter referred to as the "July 2015 Order"). It was the ongoing uncertainty surrounding the question of the meaning of "capacity" in the TCPA's definition of an ATDS that led various industry groups to seek clarification from the FCC that resulted in the July 2015 Order.

In the July 2015 Order, the FCC stated that, "Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so." 30 FCC Rcd at 7974, ¶ 15. However, the FCC made it clear that under the TCPA, equipment still must "have the 'capacity' *to dial random and sequential numbers*" even if it does not have 'the "present ability' to do so." July 2015 Order, 30 FCC Rcd at 7974, ¶ 15 (emphasis added).[1] The FCC went on to state that, in "other

---

[1] As discussed in Nationstar's Motion to Stay [ECF No. 23] the FCC's July 2015 Ruling is currently under review in a consolidated appeal before the D.C. Circuit. Because the "July 2015 Ruling does not provide real clarity as to the difference between 'potential' and 'theoretical' capacity" numerous courts around the country have stayed pending TCPA cases to allow the D.C. Circuit to provide needed clarity. *See, e.g.*, *Robinson v. Nationstar Mortg., LLC*, 220 F. Supp. 3d 1353, 1355 (S.D. Ga. 2016). It was this vague, over-expansive definition of the term

words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id.* at 7974, ¶ 16.

While the FCC's July 2015 Order is vague and overly expansive, what is clear is that to qualify as an ATDS, the telephone system must still have the "capacity" – whether present ability or some "potential functionality" – to "store or produce telephone numbers to be called, **using a random or sequential number generator**." July 2015 Order, 30 FCC Rcd at 7974; 47 U.C.S. § 227(a)(1) (emphasis added). Here, the evidence is undisputed that Nationstar's telephone system does not have the current capacity to store or produce and dial telephone numbers to be called using a random or sequential number generator. NSOF ¶¶ 52, 130-134. And Plaintiffs have presented no evidence whatsoever that Nationstar's telephone system has the "potential functionality" to "store or produce telephone numbers to be called, using a random or sequential number generator."

Plaintiff attempts to gloss over this complete lack of evidence of the capacity of Nationstar's telephone system to use a random or sequential number generator by discussing prior FCC orders and citing the testimony of an individual call representative, Ms. Wimberly. *See* Motion at pp. 11-12. However, Ms. Wimberly's testimony does nothing to establish that Nationstar's telephone

---

"capacity" set forth in the July 2015 Order that led to numerous appeals, which have all been consolidated before the D.C. Circuit in *ACA International v. Federal Communications Commission*, Case No. 15-1211. *See* Nationstar's Motion to Stay [ECF No. 23] at 1.

equipment has the requisite capacity to be an ATDS.  Ms. Wimberly simply explains how she uses the telephone equipment to speak with customers, indicating that she herself does not initiate the calls.  *See* NSOF ¶ 70.  Ms. Wimberly never states that no human intervention is required, that calls are made using a random or sequential number generator, or that Nationstar's system has such capacity.  *Id*. Instead, the only evidence is that Nationstar's equipment does require human intervention and does not have the capacity to make calls using a random or sequential number generator.  *See* NSOF ¶¶ 52, 70, 130-136.

Further, neither the 2003 nor the 2008 FCC Orders addressed whether an ATDS must have the "current" versus "future" capacity for random or sequential number generation.  Plaintiffs cite sections of the 2003 and 2008 FCC Orders [Motion at 9-10], but none of those cited sections explain whether technology that does not have the current capacity for random or sequential number generation, but may have some potential capacity to do so through theoretical alterations to the software and/or hardware, constitutes an ATDS under the TCPA.  More importantly, neither the 2003 nor 2008 FCC Orders eliminates the requirement that to be an ATDS, the telephone equipment must still have the "capacity," however that term is defined, to "store or produce telephone numbers to be called, using a random or sequential number generator."  47 U.S.C. § 227(a)(1);  *In Re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014

(2003); *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (2008).   While those rulings discussed telephone equipment that could fall within the TCPA's definition, neither eliminated the clear statutory language that the telephone equipment must still have "capacity," whether present or some potential future functionality, to "store or produce telephone numbers to be called, using a random or sequential number generator."   *Id*.   This is why clarification was sought from the FCC and why it issued the July 2015 Order.

Because the use of an ATDS "is a threshold issue" to prove a claim under the TCPA, *Rose,* 2016 WL 3369283, at *2; *Coatney v. Synchrony Bank*, 2016 WL 4506315, at *2, and Plaintiffs have not met their burden of setting forth admissible evidence that Nationstar's telephone equipment can meet the definition of an ATDS – as a matter of "current" or "potential capacity," Plaintiffs' Motion for Summary Judgment should be denied.

**B.      Alternatively, This Case Should Be Stayed Pending the Outcome of the D.C. Circuit's Decision in *ACA International* Regarding the Definition of an ATDS.**

In the consolidated *ACA International* appeal from the FCC's July 2015 Order discussed above, the D.C. Circuit will review and address, among other things, what equipment constitutes an "automatic telephone dialing system" as that term is defined by the TCPA.   Under the Hobbs Act, a federal court of appeals – like the D.C. Circuit in *ACA International* – has the exclusive power to set aside a

final FCC order like the July 2015 Order at issue here. *See CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (citing 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)); *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459, 2013 WL 6865772, at *6-7 (M.D. Fla. Dec. 31, 2013) (citing other cases).

If this Court determines that the July 2015 FCC Order is controlling on the issue of whether Nationstar's telephone equipment constitutes an ATDS, then it should stay this case for the short time it will take for the D.C. Circuit to decide whether that FCC order has any continuing validity.   In assessing whether to stay this case, the Court should assess "(1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay will simplify the issues and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *See Coatney v. Synchrony Bank*, 2016 WL 4506315, at *1 (M.D. Fla. Aug. 2, 2016).  On October 19, 2016 – over nine months ago – the D.C. Circuit held oral argument in the *ACA International* appeal, and a ruling is expected very soon.  That ruling may extinguish or significantly curtail Plaintiffs' summary judgment arguments regarding their TCPA claim in this case.  While this Court previously denied a motion to stay this action based on the outcome of the D.C. Circuit's ruling, discovery is over now and the only things left to be done are to decide summary judgment and hold a trial.  Because discovery has concluded, there is no risk of fading memories or lost documents or witnesses.

Plaintiffs will suffer no prejudice from a short delay in deciding their summary judgment motion.  On the other hand, deciding Plaintiffs' summary judgment motion on the basis of an FCC order that is likely to be overruled by the D.C. Circuit would be both incredibly inefficient and unfair to Nationstar.

Nationstar therefore asks this Court to reconsider its earlier ruling and stay its summary judgment decision until the outcome of the D.C. Circuit's *ACA International* decision, just as a legion of other federal courts across the country already have done.  *See, e.g.*, *Rosales v. Heath*, No. 8:17-cv-87, 2017 WL 2533365, at *2 (D. Neb. June 9, 2017); *Pichardo v. Amerigroup Corp.*, No. 2:17-cv-276, 2017 U.S. Dist. LEXIS 88691, at *1 (D. Nev. June 8, 2017); *Ricketts v. Consumers Energy Co.*, No. 16-cv-13208, 2017 WL 2351731 (E.D. Mich. May 31, 2017); *Kennoy v. Synchrony Bank*, No. 3:16-cv-2034, 2017 WL 2215279, at *3 (M.D. Pa. May 19, 2017); *Coulter v. Ascent Mortg. Res. Grp. LLC*, No. 2:16-cv-02237, 2017 U.S. Dist. LEXIS 76012 (E.D. Cal. May 18, 2017); *Dimarco v. Nationstar Mortg., LLC*, No. 16-cv-6588, 2017 WL 1855197 (W.D.N.Y. May 5, 2017); *Gage v. Cox Commn's, Inc.*, No. 2:16-cv-2708, 2017 WL 1536220, at *2 (D. Nev., Apr. 27, 2017); *Brickman v. Facebook, Inc.*, No. 16-cv-751, 2017 WL 1508719, at *4 (N.D. Cal. Apr. 27, 2017); *Tilley v. Ally Fin., Inc.*, No. 16-cv-14056, 2017 WL 1732021 (E.D. Mich. Apr. 26, 2017); *Doerken v. USAA Savings Bank*, No. 16-cv-8824), 2017 WL 1534186, at *3 (C.D. Cal., Apr. 26, 2017);

*Jacobs v. Ocwen Loan Servicing, LLC*, No. 16-cv-62318, 2017 U.S. Dist. LEXIS 57500 (S.D. Fla. Apr. 13, 2017); *Lily v. Synchrony Fin.*, No. 2:16-cv-2687, 2017 WL 1370698, at *1 (D. Nev., Apr. 7, 2017); *Bowden v. Contract Callers, Inc.*, No. 16-cv-6171, 2017 WL 1732017, at *2 (N.D. Cal., Apr. 5, 2017); *Wolkenstein v. Synchrony Bank*, No. 3:16-cv-2036, 2017 U.S. Dist. LEXIS 41803, at *4 (M.D. Pa. Mar. 22, 2017); *Reynolds v. Geico Corp.*, No. 2:16-cv-1940, 2017 U.S. Dist. LEXIS 28867 (D. Or. Mar. 1, 2017); *Ankcorn v. Kohl's Corp.*, No. 15-cv-1303, 2017 WL 395707 (N.D. Ill. Jan. 30, 2017); *Washington v. Six Continents Hotels, Inc.*, No. 2:16-cv-3719, 2017 WL 111913, at *2 (C.D. Cal., Jan. 9, 2017); *Joseph v. Barclays Bank*, No. 1:16-cv-29, 2017 WL 8202737 (N.D. Ga. Dec. 12, 2016).

### C.   Plaintiffs' Claimed TCPA Violations Were Not "Willful or Knowing."

Plaintiff claims that Nationstar's alleged TCPA violations were "willful or knowing" and therefore can give rise to up to treble damages under the statute. *See* 47 U.S.C. § 227(b)(3).  However, the Eleventh Circuit has made clear that in order to be liable for a "willful or knowing" violation of the TCPA, a defendant must know that it is making calls with an "automatic telephone dialing system" as defined by the TCPA:

> The requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute. *Cf. Alea London Ltd. v. Am. Home Servs., Inc.,* 638 F.3d 768, 776 (11th Cir.2011) ("The [Act] does not require any intent for liability except when awarding treble damages.").  For example, *to*

> ***violate section 227(b)(1)(A)(i), a defendant must know that he is using an "automatic telephone dialing system" to place a "call"*** . . . .

*Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (emphasis added).   As discussed in the previous section above, Nationstar's telephone equipment does not constitute an ATDS.   At the very least, Nationstar had a good faith belief, based on existing law, that its telephone equipment was not an ATDS under the TCPA.   Therefore, it did not commit a "willful or knowing" violation under controlling Eleventh Circuit law.

Additionally, it is Nationstar's policy that calls should stop when a customer requests not to be called.   NSOF at ¶ 122.   In accordance with Nationstar's policy, when a borrower verbally makes a request that calls cease, Nationstar is supposed to stop calling.   *Id.*   When such a request is made, the Nationstar agent is required to obtain any necessary information from the borrower and remove the number or raise the issue to a manager to handle.   *Id.*   As Nationstar has policies and practices in place to stop calling borrowers when such a request is made, any failure to stop the calls in this particular matter may have been a mistake by the agent, but it was not a "willful or knowing" violation by Nationstar under the Eleventh Circuit's controlling standard.   For this additional reason, Plaintiff has not proven that Nationstar committed any "willful or knowing" violations under the TCPA.

**D.    Plaintiffs Provided the Number to Nationstar and Could Not Unilaterally Revoke Consent to Be Called.**

The Welcome Letter sent to Plaintiffs when Nationstar began servicing the loan contained Nationstar's contact information and gave the Plaintiffs an opportunity to update their own phone number and contact information.  NSOF at ¶ 126.  The second page of the Welcome Letter, directly under the space provided for Plaintiffs to update their address or phone number, the Welcome Letter states, "I consent to being contacted by Nationstar Mortgage LLC at any telephone number I have provided.  This includes, but is not limited to, calls from your dialing system to my cellular or mobile telephone."  *Id.*  On numerous occasions after this letter was sent, Mr. Heard provided or affirmed his phone number to Nationstar.  *See e.g.* NSOF at ¶¶ 19, 32, 42 and 49.  Having provided his number in connection with the account, subject to the language in the Welcome Letter, Plaintiffs could not unilaterally revoke consent to be called.  *See Reyes v. Lincoln Automotive Fin. Servs.*, __ F.3d __, 2017 WL 2675363, at *4 (2d Cir. June 22, 2017) (holding that once contractual consent to receive cell phone calls is given, a consumer cannot unilaterally revoke that consent under the TCPA).

**E.    Plaintiffs' TCPA Claims Are Also Barred to the Extent they are Based on Conduct that Took Place Prior to October 14, 2015, the Effective Date of the *Wright* Class-Action Settlement.**

On August 29, 2016, the U.S. District Court for the Northern District of Illinois entered a Final Judgment and Order of Dismissal with Prejudice in *Wright*

*v. Nationstar Mortgage, LLC*, No. 1:14-cv-10457 (N.D. Ill. Aug. 29, 2016), ECF No. 135.  NSOF at ¶ 148.  In *Wright*, the district court approved a class-action settlement agreement (NSOF at ¶ 149) applying to "All persons in the United States for whom Nationstar Mortgage LLC had in its records a cellular telephone number as of October 14, 2015."  NSOF at ¶ 148 and Ex. 7 thereto at ¶ 12.  The Motion makes clear that Plaintiff is a member of this class.  *See, e.g.*, Motion at p. 4 ("Between August 22, 2015 and June 3, 2016, Plaintiffs were called . . . .").

Plaintiff was a class member of the *Wright* class action and, under clearly established law, "a release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims."  *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004).  *See also Sanders v. LVNV Funding, LLC*, No. No. 1:06-cv-570, 2007 WL 854007 (S.D. Ind. Feb. 26, 2007) (holding that a class member is bound by a settlement agreement even if he claims that he did not actually receive class notice or wishes, with hindsight, that he had opted out of the settlement).

Though Plaintiffs could have opted out of the class, they did not.  *See* NSOF at ¶ 148 and Ex. 7 at p. 12-15 (listing names of individuals who opted out and who "validly excluded themselves from the Settlement").  Thus, Plaintiffs are bound by the settlement agreement and the final judgment reached in the *Wright* case.  As a member of the *Wright* class and a party to the Settlement Agreement, Plaintiffs

released all of their claims relating to telephone calls in this action through October 14, 2015 pursuant to the settlement.  The Settlement Agreement defines "Released Claims" as

> any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory, or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties,  or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged making of Telephone Calls  including, but not limited to, any statutory, common law, arbitration or administrative claim arising from the use of automatic telephone dialing systems or an artificial or prerecorded voice, including any claim under or for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., any Federal Communications Commission regulations or orders implementing or interpreting the TCPA, federal or state unfair and deceptive practices statutes, federal or state unlawful debt collection practices statutes (including, but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq.), invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppel, and all claims that were brought or that could have been brought in the Action relating to such calls, belonging to any and all Releasing Parties.

NSOF at ¶ 149 and Ex. 8 thereto at ¶ 1.24.

Under the plain language of this Release, Plaintiffs released not only their TCPA claims, but also "any and all . . . actual [or] potential . . . causes of action . . .

of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory, or common law or any other law, rule or regulation . . . against [Nationstar] . . . arising out of . . . the alleged making of Telephone Calls." *Id.* Accordingly, Plaintiffs' Motion for Summary Judgment should be denied to the extent that any of their TCPA claim is based on telephone calls placed prior to October 14, 2015, the effective date of the *Wright* settlement.

> **F.** **Genuine Issues of Disputed Material Fact Exist Regarding the Reasonableness of Nationstar's Investigation of Plaintiff's Credit Dispute, Precluding Summary Judgment on the FCRA Claim.**

Plaintiffs contend that they are entitled to summary judgment on their FCRA claim because they allege Nationstar failed to complete a reasonable investigation of their consumer dispute. However, the undisputed facts indicate that Nationstar's investigation was both reasonable and complied with the requirements of the FCRA. Alternatively, the question of the reasonableness of the investigation has long been a question for the trier of fact, rather than for disposition on summary judgment, and should be reserved for the jury. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (explaining that the question of whether an investigation by a furnisher into a dispute is reasonable under the FCRA is a factual question reserved for trial).

Under the FCRA, a cause of action against a furnisher of credit information like Nationstar must be brought under 15 U.S.C. § 1681s-2(b). To succeed on a

claim under section 1681s-2(b), a plaintiff must establish that he or she disputed the reporting of an account to a consumer reporting agency ("CRA") and that the CRA gave notice of the dispute to the company that furnished the information to the CRA.   Only then does the furnisher's obligation to conduct a reasonable investigation arise.   After receiving notice of the dispute from a CRA, the furnisher must conduct a reasonable investigation of the specific dispute of which it received notice.   *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1313-14 (S.D. Fla. 2012) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)).   The obligation imposed on the creditor is not one of strict liability.   *Id.*

Moreover, "what is a reasonable investigation by a furnisher may vary depending on the circumstances" and "the burden of showing the investigation was unreasonable is on the plaintiff."   *See Chiang*, 595 F.3d at 38.   "Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its records."   *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008); *see also Howard v. Pinnacle Credit Servs., LLC*, No. 4:09-cv-85, 2010 WL 2600753, at *3 (M.D. Ga. Jun. 24, 2010) (emphasizing an investigation is reasonable if the furnisher is able to "verify that the reported information is consistent with the information in its records," and that the FCRA does not require a furnisher to do more).   As such, "a furnisher

'need not do more than verify that the reported information is consistent with the information in its records' for an investigation to be reasonable." *Taylor v. Georgia Power Co.*, No. 2:15-cv-06, 2016 WL 6836935, at *3 (S.D. Ga. Nov. 18, 2016) (quoting *Howard*, 2010 WL 2600753, at *3). As the court explained in *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Va. 2012):

> [Courts] must assess the reasonableness of . . . an information furnisher's investigation in light of what it learned about the dispute from the CRA. . . . A furnisher is not required to uncover and correct all inaccuracies on the consumer's credit report. Rather, a furnisher is required to correct only those inaccuracies it discovers during its reasonable investigation. Accordingly, a furnisher cannot be held liable for failing to correct those inaccuracies its reasonable investigation fails to uncover.

Further, an investigation of consumer dispute is not necessarily unreasonable under FCRA because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147,1161 1157 (2009); Fair Credit Reporting Act, § 623(b)(1)(A), 15 U.S.C. § 1681s–2(b)(1)(A).

In *Westra v. Credit Control of Penellas*, 409 F.3d 825 (7th Cir. 2005), the furnisher had "received an [ACDV] . . . indicating that [plaintiff] was disputing the charge on the basis that the account did not belong to him." In response, the furnisher verified that the plaintiff's personal identifiers matched those in the furnisher's system. *Id*. The court held that this investigation was sufficient as a matter of law. *Id*.

### (i)   The Reasonableness of An Investigation Required Under the FCRA is Normally Reserved for Trial.

Courts have traditionally found that summary judgment is not an appropriate way to determine if an investigation was reasonable or not. *See Gorman*, 584 F.3d at 1157 (stating "the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment"). The question of whether Nationstar conducted a reasonable investigation required under the FCRA is normally reserved for trial. *Hinkle*, 827 F.3d at 1303; *Westra*, 409 F.3d at 827. In *Hinkel*, the court addressed what might be necessary for a furnisher who is not the original creditor. *Id*. The defendant in *Hinkel* was not the original creditor and, in conducting its investigation into the dispute, reviewed the information it its system but did not seek additional information form prior servicers or holders of the account. *Id*., at 1305. The *Hinkel* court did not find that the defendant was not reasonable in its investigation. *Id*. Instead, the court stated that a "jury could" find that the furnishers reliance on its own records did not constitute a reasonable investigation. *Id*. As such, the court overturned the grant of summary judgment, reserving the question of the reasonableness of the investigation for the Jury. *Id*. As shown below, a reasonable jury could find that Nationstar reasonably investigated the disputed information thereby fully complying with the FCRA.

**(ii)   Nationstar Complied with the FCRA by Conducting a Reasonable Investigation.**

Summary judgment is not appropriate because Nationstar conducted a reasonable investigation, and at worst, there is a dispute of fact as to the reasonableness.  Plaintiffs contend that Nationstar failed to complete a reasonable investigation.  However, the evidence before the court in this case does not support that conclusion.  To the contrary, the evidence is such that reasonable a jury could find that Nationstar reasonably investigated the disputes.

The evidence before the Court indicates that Nationstar invested resources in its team members in responding to Automated Credit Dispute Verification ("ACDV") reports from credit reporting agencies.  Deposition testimony from multiple Nationstar employees shows that Nationstar provided content-specific training to its employees regarding how to handle ACDVs and also periodically reviewed their performance to ensure proper handling of ACDVs.  NSOF at ¶ 137.  Nationstar also dedicated its ACDV-trained staff solely to the task of responding to ACDVs received from credit reporting agencies.  *Id.*  By tasking its employees only with reviewing ACDVs, Nationstar's employees can become adept at properly handling these matters.

Further, it is undisputed that Nationstar's employees conducted an investigation into each of the Plaintiffs' ACDVs received from the CRAs.  NSOF ¶¶ 142, 145-47.  Shope investigated the ACDV from Transunion and provided a

response after verifying the information being reported with Nationstar's records, including a pay history. *Id*. Rotheram investigated the ACDV from Equifax and responded for Nationstar. *Id*. Kasza reviewed and investigated the ACDV received from Experian, including the pay history and the note, and then responded on behalf of Nationstar. *Id*. These employees testified that they reviewed each ACDV, going through all the information provided in the dispute and checking it against Nationstar's records for the account. NSOF at ¶ 142. Even assuming the responses from Nationstar to the ACDVs contained inaccurate information, the content of the responses does not render the investigations unreasonable as a matter of law. *Gorman,* 584 F.3d at 1161.

Plaintiffs also assert that the investigation was not reasonable because the employees reviewing the ACDVs never contacted Nationstar's escrow department. However, the information that the CRAs actually provided to Nationstar for review shape the determination of the reasonableness of the investigation of ACDVs. *Gorman,* 584 F.3d at 1157. As evidenced by the deposition testimony of each of the employees, it is still not clear that any of the ACDVs received included Plaintiffs' dispute letter with the alleged proof of insurance, which may have alerted the employees to take further action, including possibly contacting the escrow department. NSOF at ¶¶ 97, 143-144. The content, or existence of, any attachments to the ACDVs remains very much in dispute. *Id*. Plaintiffs' evidence

shows, at most, that they transmitted a letter to the CRAs when initiating their dispute.  They provide no evidence whatsoever that the letter was actually sent to Nationstar by the CRAs.  Moreover, even if the letter was sent, Plaintiffs provide no evidence that it was in a format that could be seen or read by Nationstar.  NSOF at ¶¶ 97, 144.  As part of the investigation of the ACDVs, a defendant is not required to contact its escrow department or to "do more than verify that the reported information is consistent with the information in its records."  *Krajewski*, 557 F. Supp. 2d at 610.

Nationstar's reasonably investigated each of the ACDVs received from the CRAs and confirmed the information being reported as consistent with its records.  *See Westra*, 409 F.3d at 826-27 (holding that the agency conducted a reasonable investigation when it relied on internal records to verify a disputed debt).   Based on these facts, summary judgment on the FCRA claim is not warranted because Nationstar's investigation was reasonable as a matter of law or, at the very least, a disputed issue of material fact remains for the jury to decide.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Nationstar Mortgage, LLC respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment in its entirety.

Respectfully submitted this 26th day of July, 2017.

/s/ Ryan J. Hebson
R. Frank Springfield (SPR024)
Ryan J. Hebson (HEB003)

BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
fspringf@burr.com
rhebson@burr.com

Henry Pietrkowski (admitted PHV)
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, Illinois  60606-7507
Telephone:  (312) 207-3904
Facsimile:  (312) 207-6400
hpietrkowski@reedsmith.com

Robert M. Luck, III (admitted PHV)
REED SMITH LLP
901 East Byrd Street
Suite 1700
Richmond, Virginia  23219
Telephone:  (804) 344-3416
Facsimile:  (804) 344-3410
rluck@reedsmith.com

Attorneys for Defendant
NATIONSTAR MORTGAGE LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of July, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Joshua C. Snable
Snable Law Firm, LLC
2112 11th Avenue South, Suite 528
Birmingham, Alabama  35205
jsnable@snablelaw.com

David A. Chami
PRICE LAW GROUP, APC
1204 E. Baseline Rd., Suite 102
Tempe, Arizona  85283
david@pricelawgroup.com

I hereby certify that I have mailed by United States Postal Service the foregoing document to the following non-CM/ECF participants:  N/A_____.

Respectfully submitted,


 */s/ Ryan J. Hebson*_____
Ryan J. Hebson (HEB003)
Of Counsel

30123833 v1