FILED

2017 Aug-08  PM 06:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| TOMMY & KATRINA HEARD,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONSTAR MORTGAGE LLC,<br>*et al.*<br><br>    Defendants. | **Civil Action No. 2:16-CV-00694-MHH**<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSTION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: TBD<br><br>(Oral Argument Requested) |

## TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 56 Plaintiffs, Tommy and Katrina Heard ("Plaintiffs"), hereby submit their reply to Defendant, Nationstar Mortgage, LLC's ("Nationstar") opposition to Plaintiffs' motion for partial summary judgment.

DATED this 3rd day of August 2017.

/s/ David A. Chami
David A. Chami (pro hac vice)
PRICE LAW GROUP, APC
1204 E. Baseline Road, Suite 102
Tempe, Arizona 85283
david@pricelawgroup.com

/s/Joshua C. Snable
SNABLE LAW FIRM, LLC
2112 11th Avenue South, Suite 528
Birmingham, AL 32505
jsnable@snablelaw.com
Attorneys for Plaintiffs
Tommy & Katrina Heard

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION………………………………………….………….. 1

II.     BACKGROUND………………………………….…………........... 1

III.    ARGUMENT………………………….………………………........ 1

  A.   Defendant's Used an ATDS……………….……………………………… 1

  B.   The Case Should not be Stayed………..……….………………….…….... 2

  C.   Defendant's TCPA Violations Were "Willful or Knowing"……………. 3

  D.   Oral revocation of consent to be
       contacted is sufficient revocation…………………………………………. 6

  E.   Plaintiffs' TCPA Claims are not Barred
       for Several Reasons….……………………………………………....… 8

       1.   The Defendant's Did Not Properly Raise the Defense of Res Judicata
            and Are Barred from Arguing it 461 Days
            Since the Commencement of the Lawsuit…….……………………… 8

       2.   Barring Plaintiffs' Claim would violate
            the due process clause……………………...……………………… 10

       3.   The vast majority of the unauthorized calls took place after
            October 14, 2015, the Effective date of the
            Wright Class-Action settlement.……………………………………… 11

  F.   F. Nationstar's Investigation of Plaintiffs' Credit Dispute were not
       Reasonable and Therefore
       Summary Judgment is Appropriate.…………………………………… 11

V.     CONCLUSION………………………………………………………  15

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACA Int'l v. FCC*, Case No. 15-1211,
  2015 U.S. App. LEXIS 18554 (D.C. Cir. July 13, 2015)…………………... 1

*Arizona v. California*, 530 U.S. 392, 406 (2000)…………………………........ 10

*Brenner v. Am. Educ. Servs.*, 575 Fed.Appx. 703 (8th Cir.2014)………………… 7

*Cf. Alea London Ltd. v. American Home Services, Inc.,*
  638 F.3d 768, 776 (C.A.11 (Ga.),2011)…………………………………… 3

*Davignon v. Clemmey*, 322 F.3d 1, 15 (1st Cir. 2003)…………...………............... 9

*Gager v. Dell Financial Services LLC,*
  727 F.3d 265 (3d Cir. 2013)…………………….………………………... 7,8

*Gutierrez v. Barclays Grp.*, Case No. 10CV1012 DMS BGS,
  2011 WL 579238 (S.D. Cal. Feb. 9, 2011)………………………………… 7

*Howard v. Pinnacle Credit Services*, LLC., Case No. 4:09-CV-85 (CDL),
  2010 WL 2600753, (M.D. Ga. June 24, 2010)…………………….….... 13,14

*Krajewski v. Am. Honda Fin. Corp.*,
  557 F. Supp, 2d 596 (E.D. Pa. 2008)…………..…………………....….. 13

*Meyer v. Portfolio Recovery Assocs.*, LLC, Case No. 11cv1008 AJB (RBB),
  2011 U.S. Dist. LEXIS 156610 (S.D. Cal. Sept. 14, 2011)………………… 2

*Meyer v. Portfolio Recovery Assocs., LLC*,
  696 F.3d 943 (9th Cir. 2012)…………………….……………………….. 2

*Munro v. King Broad. Co.,* No. C13–1308JLR,
  2013 WL 6185233 (W.D. Wash. Nov. 26, 2013)…………………………... 7

*Osorio v. State Farm Bank,*
746 F.3d 1242 (11th Cir. 2014)…………..……………………………….. 7, 8

*Pepe v. Shepherd*,
422 So.2d 910 (Fla. Dist. Ct. App. 1982) …………….…..…………… 8

*Reardon v. Uber Technologies, Inc.*,
115 F.Supp.3d 1090 (N.D. Cal. 2015)…….…………….……………….. 7

*Reyes v. Lincoln Automotive Fin. Servs.,*
861 F.3d 51 (2d. Cir. 2017)……………….…..……………………... 6, 7

*Stroud v. Bank of Am.*,
886 F. Supp. 2d 1308 (S.D. Fla. 2012)……………………………….. 11

*Taylor v. Georgie Power Co.,* No. 2:15-cv-06,
2016 WL 2600753 (S.D. Ga. Nov. 18, 2016)……………………………… 13

*Wright v. Nationstar Mortg., LLC,* Case No. 14 C 10457,
2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016)……………. 2, 9, 11

## FCC DECLARATORY RULINGS

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
18 FCC Rcd. 14014 (2003) ….………..……………………….……… 3, 4

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
30 F.C.C.R. 7961, 7965 (2015)….……………………………………… 5, 7

## STATUTES

47 U.S.C. § 227……………………………………………..…………… 15

15 U.S.C. Sections
§ 1681n……………………………………………………………..…… 15
§ 1681o…………………..…………………………………..…………… 15
§ 1681o(a)(1)……………………………………………………….... 15

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

**RULES**

Federal Rules of Civil Procedure Rule 8(c)…….…………………………………….. 8

Alabama Rules of Civil Procedure Rule 8(c)…………………………………….... 8

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiffs refer the Court to their Motion for Summary Judgment at Doc. 48.

## II.    BACKGROUND

Plaintiff refers the Court to its background facts that have been previously presented in Plaintiffs' Motion for Summary Judgment at Doc. 48.

## III.    ARGUMENT

### A. Defendant Used an ATDS

Defendant argues that it does not use an ATDS. It argues that its "Avaya Proactive Contact system" is not an ATDS and cannot violate the TCPA. However, under established law, Nationstar's dialing system is considered an ATDS.

Plaintiffs filed their Complaint on April 28, 2015 at Doc. 1. Four months later, Defendant settled a putative TCPA class action regarding this very system. Defendant's TCPA settlement occurred just two short months before oral argument was to be heard in the *ACA Int'l* case which Defendant has desperately sought to use in this case as both a sword and a shield. *ACA Int'l v. FCC*, Case No. 15-1211, 2015 U.S. App. LEXIS 18554 (D.C. Cir. July 13, 2015). In one breath, Defendant argues that's its settlement precludes Plaintiffs from bringing a TCPA claim for conduct that occurred before October 14, 2015. Then, Defendant denies that the same equipment that prompted the class action settlement does not qualify as an ATDS. (Doc. 51 at p.17-18).  Defendant is speaking out of both sides of its mouth. The

allegations made in *Wright v. Nationstar Mortg., LLC* were virtually identical to the allegations made by Plaintiffs regarding Defendants use of an ATDS. Case No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016).

Similarly, In *Meyer v. Portfolio Recovery Assocs.*, LLC, Case No. 11cv1008 AJB (RBB), 2011 U.S. Dist. LEXIS 156610 (S.D. Cal. Sept. 14, 2011) the court found that the Avaya Proactive Contact system, the model used by Nationstar, was the type of system that Congress intended to protect consumers from when drafting the TCPA. The court stated "…based upon the legislative history of the TCPA, Congress was attempting to alleviate a particular problem—an increasing number of automated and prerecorded calls to certain categories of numbers. To that effect, the legislative history indicates Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies to ensure that the prohibition on autodialed calls not be circumvented by changing technologies." (affirmed in *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943 (9th Cir. 2012)). It's clear that the system that Nationstar uses is an ATDS. As discussed further below, there is overwhelming evidence to support this conclusion.

## B. The Case Should not be Stayed

On December 6, 2016, this Court denied Defendant's Motion to Stay pending ruling by the D.C. Circuit Court of Appeals re: *ACA Int'l v. FCC*, Case No. 15-1211, 2015 U.S. App. LEXIS 18554 (D.C. Cir. July 13, 2015). Doc. 38. It is now several

months later and the D.C. Circuit is arguably no closer to making a decision than it was back in December. Regardless of the outcome, an appeal is certain to follow.

As discussed in Plaintiffs' original opposition to the motion to stay, Plaintiffs case is, in large part, related to damage done to Plaintiffs' credit reputation and the damages they suffered related to that conduct.  The Court has already addressed this request and should uphold its prior ruling. Should the Court be inclined to consider this argument Plaintiff request the Court refer to the arguments made in their opposition filed to Defendant's original motion.

### C. Defendant's TCPA Violations Were "Willful or Knowing"

Defendant argues it could not have violated the TCPA willfully or knowingly because it does not use an ATDS in the first place. As the Defendant indicated in its Opposition, the Eleventh Circuit defined willful and knowing conduct. *See Cf. Alea London Ltd. v. Am. Home Servs., Inc*., 638 F.3d 768, 776 (11th Cir. 2011). In order for a Defendant to be liable under the TCPA for treble damages the violator must have known he was using an ATDS to place the call. *Id.*

Defendant's claim that it has a good faith belief that it was not using an ATDS is preposterous. Doc. 51 at p. 15.  Defendant's own employees believe the equipment they are using is an automatic dialer; its own records refer to some of the calls as pre-recorded messages; and the plain language of 2003 FCC Order makes clear that the equipment being used is precisely the type of equipment the law intended to

regulate.  During the deposition of Chrishauna Wimberly, she indicated that there was no human intervention needed to place the calls and the system places the outbound calls for her without any knowledge of who is being contacted. Doc. 48, Ex. Q at 17:19-21, 19:4-8, 20:4-21:2, 20:4-25, 21:2. Additionally, the collection rep who contacted Mr. Heard on August 4, 2015 call, stated he cannot stop the calls because Nationstar uses an Automatic Dialer. (Doc. 47 at ¶¶ 49, 62, 68-70).

Through discovery, and notwithstanding Defendant's contentions to the contrary, Plaintiff has established that Defendant uses an ATDS.  The Defendant argues in its Opposition that it manually uploads the information into its dialing system and that action does not constitute an ATDS. However, in its **2003** Order the FCC explained that the TCPA includes equipment that "has the capacity to store or produce numbers and dial those numbers at random, sequential order, or **from a database of numbers**" (emphasis added). *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014 ¶ 131 (2003.)   The Commission also described a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091, para. 131.  The Commission also noted that the "principal

feature of predictive dialing software is a timing function, not number storage or generation." *Id.* After discussing the TCPA's definition of "autodialer" and Congress' intent in creating the TCPA, the Commission found that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id.* at 14091-92, paras. 132-33.

The FCC further reiterated this position in its 2015 order. There the FCC stated: "We reaffirm our **previous statements** that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") **even if it is not presently used for that purpose**, including when the caller is **calling a set list of consumers** (emphasis added). We also reiterate that **predictive dialers**, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C.R. 7961, 7965 (2015). Defendant's contention that it was not aware that its equipment qualified as an ATDS is ridiculous considering the FCC's 2015 order, published one month prior to Plaintiff's first revocation, especially when taken in conjunction with the settlement agreement Defendant entered into in the Putative Class Action in August of 2015.

Defendant cannot argue it does not use an ATDS or that it did not know it was using an ATDS.

**D. Oral revocation of consent to be contacted is sufficient revocation.**

Desperate to find a way to survive summary judgment, Defendant argues that Plaintiffs cannot unilaterally revoke consent that was given via a contract. *See* Doc. 51, at p. 16.  However, Defendant fails to even provide this Court with a credible argument that its welcome letter is a contract.  The "Welcome letter" was intended to notify Plaintiff that Defendant was now their loan servicer.  It is clear from the June 4, 2015 recording that Plaintiff never received this letter. Doc. 48-4, Ex. D at 10:50-12:40. Even if Plaintiff had received the letter, it is not a contract.

The 2nd Circuit Court of Appeal addressed revocation of prior express consent in a written contract in *Reyes v. Lincoln Automotive Fin. Servs.,* 861 F.3d 51 (2d. Cir. 2017).  The court held that if a party to a **binding contract** gives consent to be contacted on their cell phone, that party cannot unilaterally revoke consent to be contacted any further. The facts are not only distinguishable, they share no similarities.  The Plaintiff in *Reyes* signed a contract to purchase a new car. The contract that gave rise to the obligation included language that Lincoln Automotive Financial Services had the right to contact him on his cell phone with an automatic telephone dialing system. Unlike *Reyes*, Plaintiffs in this case never signed a contract allowing Nationstar to contact them using an automatic telephone dialing system.

The TCPA contemplated Prior Express Consent (in writing) and therefore the Second Circuit's ruling contradicts not only the statute, but all other decisions

throughout the rest of the country.  There is currently a request for Rehearing En Banc. Even if the facts were identical to *Reyes* (they are not), this is the Eleventh Circuit and the decision cannot be used to reverse Eleventh Circuit case law. "Several appellate and district courts have held that consent under the TCPA can be revoked, and that [communications] sent after consent is revoked violate the TCPA." *Reardon v. Uber Technologies, Inc.*,115 F.Supp.3d 1090, 1102 (N.D. Cal. 2015); *See also*, *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 270 (3rd Cir. 2013) (the court held that "the TCPA allows consumers to revoke their prior express consent" and that it "is consistent with the basic common law principle that consent is revocable"); *Brenner v. Am. Educ. Servs.*, 575 Fed.Appx. 703 (8th Cir.2014) (per curiam); *Munro v. King Broad. Co.,* No. C13–1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013); *Gutierrez v. Barclays Grp.*, Case No. 10CV1012 DMS BGS, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Furthermore, the 2015 FCC Order "makes clear that consumers may revoke consent through any reasonable means, either orally or in writing. *Reardon*, 115 F.Supp.3d 1092 (*See* 2015 FCC Order, ¶¶ 55, 64).

In *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014), the court held that because the TCPA was silent on revoking consent, "that Congress sought to incorporate 'the common law concept of consent.'" Further, the *Osorio* Court looked to the Third Circuit's ruling in *Gager* and stated that because the TCPA

was silent in regards to the right of revocation, the question should be resolved based on the common law concept of consent and in favor of the consumer. *Id.* at 1252. Accordingly, "[c]ommon-law notions of consent generally allow oral revocation." *Id.* at 1255; *See also Pepe v. Shepherd*, 422 So.2d 910, 911 (Fla. Dist. Ct. App. 1982). Moreover, the *Osorio* court stated that "allowing consent to be revoked orally is consistent with the 'government interest articulated in the legislative history of the Act [that] enable[es] the recipient to contact the caller to stop future calls." *Osorio*, at 1255. (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013)).

This Court must apply the law in *Osori*o, an Eleventh Circuit Court of Appeals decision, because it is the settled law in this Circuit.

### E. Plaintiffs' TCPA Claims are not Barred for Several Reasons.

#### 1. Defendant Did Not Properly Raise Res Judicata and are Barred from Arguing it 461 Days Since the Commencement of the Lawsuit.

According to the Federal Rules of Civil Procedure Rule 8(c) and Alabama Rules of Civil Procedure Rule 8(c), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . *res judicata*." (emphasis added)

In *Davignon v. Clemmey*, the defendant raised a res judicata defense "near the close of the Davignons' case." 322 F.3d 1, 15 (1st Cir. 2003). The plaintiffs argued

that because the defendant failed to raise the res judicata defense, which is an affirmative defense under the FRCP, it is deemed waived. *Id*. The Court held that FRCP 8(c) is "designed to provide plaintiffs with adequate notice of a defendant's intention to litigate an affirmative defense, thereby affording an opportunity to develop any evidence and offer responsive arguments relating to the defense." *Id*. Additionally, the Court held that there are certain exceptions to the rule which may be invoked; "either where (i) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay; or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." *Id*.

Defendant has now, for the first time, raised the argument that the Plaintiffs are barred from litigating their TCPA claims because of a class action settlement that occurred 4 months after Plaintiffs' lawsuit was filed. However, to raise this affirmative defense, the Defendant was required to raise it in its answer. Further, the Defendants do not fall within the exceptions. Defendant raises this argument now, for the first time, 461 days into this lawsuit; albeit for a very limited number of calls that occurred prior to October 14, 2015. Coincidentally, Defendant's counsel in the instant case is the same counsel in the *Wright* Class-Action; Henry Pietrkowski, Reed Smith LLP. It is mind-boggling that this defense was not raised earlier.

In *Arizona v. California*, the Supreme Court of the United States had to resolve a question regarding whether claims to additional water rights were precluded because of the Supreme Court's decision in an earlier case. The Supreme Court held "[t]he State parties had every opportunity, and every incentive, to press their current preclusion argument at earlier stages in the litigation, yet failed to do so." *Arizona v. California*, 530 U.S. 392, 406 (2000). The Supreme Court went on to state that res judicata, an affirmative defense, is "ordinarily lost if not timely raised." *Id.* at 410.

## 2. Barring Plaintiffs' Claim would violate the due process clause.

On April 28, 2016, the Plaintiffs' filed their complaint to initiate this lawsuit. Plaintiff was not provided notice of the pending Class Action despite Defendant being represented by the same firm in both cases.  Additionally, in the release, the Court identified class members to include "All persons in the United States for whom Nationstar Mortgage LLC had in its records a cellular telephone number as of October 14, 2015." NSOF at ¶ 148 and Ex. 7 thereto at ¶ 12. This would not include Plaintiff since Nationstar listed Plaintiff's cellular telephone number as his **home telephone** number within their system. *See* Doc. 48-7, Ex. G (Nationstar 001209 – Plaintiff's cellular phone number listed as his home phone).

### 3. The vast majority of the unauthorized calls took place after October 14, 2015, the Effective date of the Wright Class-Action settlement.

Defendant states that in its Opposition to Plaintiffs Motion for Summary Judgment that the "[p]laintiffs' TCPA claims are also barred to the extent they are based on conduct that took place prior to October 14, 2015, the effective date of the Wright Class-Action settlement. If this Court is inclined to believe Defendant's argument that Plaintiffs are barred from asserting TCPA claims it would only apply to the calls that occurred on or before October 14, 2015. As Defendant stated in its Response and Counterstatement to Plaintiffs' Statement of Facts, "[a]s Plaintiff did not speak to Nationstar on August 22, 2015, it is not possible that Plaintiff requested that Nationstar stop calling him on that date." Doc. 52, p.11 Response 55. Therefore, this Court should ignore Defendant's preclusion argument and grant Plaintiffs' Partial Motion for Summary Judgment. At a minimum, Plaintiff would still be entitled to summary judgment as to all calls that occurred after October 14, 2015

### F. Nationstar's Investigation of Plaintiffs' Credit Dispute were not Reasonable and Therefore Summary Judgment is Appropriate.

The Defendant relies on *Stroud v. Bank of Am.,* for the proposition that "[a]fter receiving notice of the dispute from a CRA, the furnisher must conduct a reasonable investigation of the specific dispute of which it received notice. *Stroud v. Bank of Am.*, 886 F. Supp., 2d 1308, 1313-14 (S.D. Fla. 2012) (citing *Chiang v. Verizon New England Inc.,* 595 F. 3d 26, 38 (1st Cir. 2010)). (Doc.51, Defendant's Opposition p.

20).   What is significant is the courts requirement that the Defendant must "…conduct a reasonable investigation **of the specific dispute of which it received notice**." (emphasis added) (Doc. 51, Defendant's Opposition p. 20).

The Defendant in this case admittedly did nothing more than parrot the information that was contained on its computer screen related to payment history. They failed to look to the actual records they had in their system.  The Defendant's dispute agents admittedly did not do anything at all to investigate the actual issue raised by the Plaintiffs. When asked, Ms. Shope stated that she would not be able to correct the escrow data that had been improperly added to Plaintiffs' account. Doc. 48-19, Ex. S at 38:18-25, 39:1-18. The Plaintiffs clearly stated in their dispute letters that their Nationstar Mortgage account was reporting inaccurately because there had been insurance improperly force placed on their home yet the dispute agents only verified payment history (Doc. 48-23, Ex. W).  Only after litigation, and just prior to the compelled deposition, did Nationstar "investigate" the claims and finally removed the inaccurate reporting. Doc. 48-15, Ex. O at 27:19-28:6. No reasonable jury would determine that simply parroting what is displayed on the computer screen could be a reasonable investigation under these circumstances.   Defendants admittedly did not look at the "..specific dispute of which it received notice."  It can't be ignored that Mr. Heard had previously notified Nationstar on numerous occasions of the very information contained in the dispute. Those notes were included in

Nationstar's records for all employees to see.  Admittedly, Defendant's agents did no investigation of the items disputed by Plaintiffs and therefore Court should grant Plaintiffs' Motion for Summary judgment.

Defendant next turns to *Krajewski* to argue that "[a]bsent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its **records** (emphasis added)." *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp, 2d 596, 609 (E.D. Pa. 2008). The Defendant quoted the *Krajewski* case, along with other cases, claiming that "a furnisher [it] 'need not do more than verify that the reported information is consistent with the information in its records' for an investigation to be reasonable." *Taylor v. Georgie Power Co.,* No. 2:15-cv-06, 2016 WL 2600753, at *3 (S.D. Ga. Nov. 18, 2016) (quoting *Howard v. Pinnacle Credit Services*, LLC., Case No. 4:09-CV-85 (CDL), 2010 WL 2600753, at *3 (M.D. Ga. June 24, 2010)). Defendant is twisting the holding of *Krajewski* and requesting that this Court do the same.  "Records" are not limited to the payment history screen (which may not be available to a down the line creditor). "Records" include all of the information the furnisher has in its system. In this case it includes the proof of insurance that Plaintiffs had sent to Nationstar on June 5, 2015.  It would also include the notes of the numerous conversations that the Heards had with Nationstar.

In *Howard,* the court stated that "[i]t is undisputed that the only information provided to Defendant about Plaintiff's dispute was: 'Consumer states inaccurate information. Provide or confirm complete ID and account information.'" *Id.* The dispute letter by the plaintiff in the *Howard* case did not explain that the "debt did not belong to Plaintiff, that Plaintiff was the victim of her own daughter's unauthorized use of her name and credit, or that the account belonged to Plaintiff's daughter and not to Plaintiff." *Id.* Due to the scant information provided by plaintiff in *Howard,* the court found that the defendant conducted a reasonable investigation into the plaintiff's dispute.

With all of the cases cited by Defendant, the overarching theme was that the consumer failed to provide enough information related to the inaccuracy. The same cannot be said here. Plaintiffs' provided specific and detailed information related to an issue that Defendant was already fully aware of based on its well documented discussions with Plaintiff over the preceding months. Defendant's attempts to mischaracterize the courts' rulings, and limit "records" to a computer screenshot of payment history is disingenuous to say the least. Defendant's "interpretation" of the cases is clearly not consistent with the law and the cases cited by Plaintiffs in their motion for summary judgment. Plaintiffs' disputes explained that they attached proof of insurance along with the dispute to give Defendant a clear understanding of

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

the issues. (Doc. 48-23, Ex. W).  This is in addition to the fact that all of this information was already provided to Nationstar over the preceding months.

For the reasons stated above, this Court should reject the Defendant's arguments and grant Plaintiff's motion for summary judgment on the FCRA claims. Given the facts of the case, no reasonable jury could determine that a reasonable investigation was conducted by the Defendant.

### G. CONCLUSION

Plaintiff respectfully further requests that this Honorable Court grant Plaintiff's motion for summary judgment as to liability for Defendant's negligent and willful violations of the TCPA and award statutory damages of $271,000.00 pursuant to 47 U.S.C. § 227(b)(3)(B), § 227(b)(3)(C) in addition to reasonable attorney's fees pursuant to 15 U.S.C. § 1681n & o, following an application for fees. Plaintiff seeks a trial as to actual damages under 15 U.S.C. 1681o(a)(1).

Respectfully submitted this 8th day of August 2017

/s/ David A. Chami
David A. Chami (pro hac vice)
PRICE LAW GROUP, APC
1204 E. Baseline Road, Suite 102
Tempe, Arizona 85283
david@pricelawgroup.com

/s/Joshua C. Snable
OF COUNSEL:
SNABLE LAW FIRM, LLC
2112 11th Avenue South, Suite 528
Birmingham, AL 32505
jsnable@snablelaw.com

Attorneys for Plaintiffs
*Tommy & Katrina Heard*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of August 2017, a true and exact copy of

the foregoing has been served via U.S. Mail and Electronic Mail upon the following

counsel of record:

Of Counsel:
R. Frank Springfield (SPR024)
Ryan J. Hebson (HEB003)
BURR & FORMAN LLP
420North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205)251-3000
fspringf@burr.com
rhebson@burr.com

Robert M. Luck, III (admitted pro hac vice)
REED SMITH LLP
901 East Byrd Street Suite 1700
Richmond, Virginia 23219
Telephone: (804) 344-3416
rluck@reedsmith.com

Henry Pietrkowski (admitted pro hac vice)
REED SMITH LLP
10 South Wacker Drive 40th Floor
Chicago, Illinois 60606-7507
Telephone: (312) 207-3904
hpietrkowski@reedsmith.com

Attorneys for Defendant
Nationstar Mortgage, LLC


/s/ Sandra Padilla

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT